**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMPONENTONE, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 05cv1122 |
| | ) | |
| COMPONENTART, INC., | ) | |
| COMPONENTART HOLDINGS, INC., | ) | |
| STEVE G. ROLUFS, MILJAN BRATICEVIC, | ) | |
| JANE DOE, DUSAN BRATICEVIC, | ) | |
| JOHN DOE and CYBERAKT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 16, 2007

By Memorandum Opinion and Order of Court dated March 12, 2007 (*Document No. 102*), the Court granted the Motion to Dismiss John Doe (Vernon Rolufs), Jane Doe (Milena Braticevic), and ComponentArt Holdings, Inc. under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Thereafter, the Plaintiff filed a Motion for Clarification and/or Partial Relief, which the Court granted in part.  *See* Order of Court dated March 30, 2007 (*Document No. 107*).  The Court permitted Plaintiff forty-five (45) days in which to conduct jurisdictional discovery of Vernon Rolufs and ComponentArt Holdings, Inc. and stayed or otherwise held under reconsideration its Order of March 12, 2007, until said jurisdictional discovery was completed and the parties supplemented the record.[1]

---

[1]     Plaintiff did not object to the dismissal of Jane Doe (Milena Braticevic) nor does it appear that Plaintiff conducted any jurisdictional discovery as it relates to Milena Braticevic.

The parties have now completed the jurisdictional discovery and have supplemented the record by the filing of the following:  PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*Sealed Doc. 127)*; DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*Document No. 134*); and the PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*Document No. 137*).

After reconsideration and an analysis of the applicable case law, the affidavits and documentation submitted, as well as the extensive memoranda filed  in support of the respective positions of the parties, the Court finds and rules that its Order of March 12, 2007, should be reinstated and that Defendants John Doe (Vernon Rolufs) and ComponentArt Holdings, Inc. are dismissed as defendants in this matter.


**Standard of Review**[2]

Generally a motion for reconsideration will only be granted if: (1) there has been an intervening change in controlling law; (2) new evidence, which was not previously available, has become available; or (3) necessary to correct a clear error of law or to prevent manifest injustice. *Hirsch Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 47 U.S. 1171 (1986).

---

[2]     *See* Memorandum Opinion and Order of March 12, 2007 for an indepth discussion of when a court may exercise personal jurisdiction (both specific and/or general) over a defendant.

2

For the purpose of a 12(b)(2) motion, the Court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Carteret Savings Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied*, 506 U.S. 817 (1992). However, when challenged, the burden of establishing personal jurisdiction rests upon the plaintiff. *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993). "Plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3rd Cir. 1984).[3]   The plaintiff must offer evidence that establishes with reasonable particularity the existence of sufficient contacts between the defendant and the forum state to support jurisdiction. *See Carteret,* 954 F.2d at 146; *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

When the district court does not " ' hold an evidentiary hearing . . ., the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor'." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. 05-3288, -- F.3d ---, 2007 WL 2135274 at *2 (3d Cir. July 26, 2007) (*quoting Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

### Discussion

The Court described the facts alleged in Plaintiff's amended complaint in its March 12, 2007,  Memorandum Opinion and need not repeat them here.

---

[3]    Whether a Court may exercise personal jurisdiction over a defendant is "inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club, supra*, 735 F.2d at 67 n.9.

A.        <u>ComponentArt Holdings, Inc.</u>

       1.        *Alter Ego Theory*

As it did in its original motion, Plaintiff continues to argue that ComponentArt Holdings is the "alter ego" of co-defendant ComponentArt Inc., a party which has not challenged in personam jurisdiction.  In its Order of March 12, 2007, the Court found that while Plaintiff had cited numerous factors that suggested a high degree of intimacy between ComponentArt Holdings and ComponentArt Inc., "it offer[ed] no evidence from which an inference can be drawn that the two corporations do not respect normal corporate formalities, or do not deal with each other as separate legal entities, or that ComponentArt Holdings controls the day-to-day operations of ComponentArt Inc. . . . ."  Memorandum Opinion, at 10.

"A subsidiary will be considered the alter-ego of its parent only if the parent exercises control over the activities of the subsidiary." *Clemens v. Gerber Scientific, Inc.*, Civ. A. No. 87-5949, 1989 WL 3480 (E.D. Pa. Jan. 13, 1989).  To prevail under its alter ego theory, Plaintiff must demonstrate that "[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship." *In re Latex Gloves Products Liability Litig.*, No. MDL 1148 (Aug. 22, 2001) 2001 WL 964105 *3 (E.D. Pa. 2001). "Plaintiff must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent."  *Latex Gloves*, 2001 WL 964105, *3 (citing *Arch v. American Tobacco Co., Inc.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997)).

Plaintiff does not contend that ComponentArt Holdings controls the day-to-day activities of ComponentArt Inc.; rather, it relies on the following allegations:

(i)     the alleged undercapitalization of ComponentArt Holdings and the failure to explain the valuation of Cyberakt when it was sold to ComponentArt Holdings;

(ii)     the alleged lack of a market rationale for appointing Vernon Rolufs to act as President of ComponentArt Holdings;

(iii)     the absence of "customary" corporate documents with regard to the employment of Steve Rolufs as CEO of ComponentArt Holdings and other activities of ComponentArt Holdings;

(iv)     the aligned interests of ComponentArt Holdings and ComponentArt Inc. in legal disputes and the sharing of the companies' intellectual property; and

(v)     the absence of evidence of internal operations within ComponentArt Holdings.

In response, where appropriate, ComponentArt Holdings has refuted each of these allegations either by deposition testimony and/or documentary evidence.

With all these arguments in mind, the Court once again turns to the relationship between ComponentArt Holdings and ComponentArt Inc.  Even taking all of Plaintiff's allegations to be true and resolving all factual disputes in favor of Plaintiff, the Court again finds that Plaintiff has failed to show that ComponentArt Holdings is the alter ego of ComponentArt, Inc.

This Court previously found that there is a "high degree of intimacy and communality between the two entities" and nothing in the supplemented record convinces the Court otherwise.  Moreover, neither the new evidence nor new arguments of Plaintiff persuade this Court that the two corporations do not respect normal corporate formalities, or do not deal

with each other as separate legal entities, or that ComponentArt Holdings controls the day-to-day operations of ComponentArt Inc. such that ComponentArt Inc. can "be said to be a mere department of the parent." *In Latex Gloves*, 2001 WL 964105 *3.

The Court finds and rules that Plaintiff continues to rely upon conclusory allegations, conjecture, and speculation to support its claim that ComponentArt Holdings has emasculated ComponentArt Inc.'s corporate identity.  Such allegations, conjecture, and speculation are insufficient to establish jurisdiction.   The Court declines to find that personal jurisdiction is proper over ComponentArt Holdings based on Plaintiff's allegations that ComponentArt Holdings is the alter ego of ComponentArt Inc.

2.      *Ownership of the Domain Name COMPONENTART.COM* and the Filing of
A Patent Application in the United States

Plaintiff also argues that personal jurisdiction in this Court is proper over ComponentArt Holdings because ComponentArt Holdings is the "owner"[4] of the domain name <componentart.com> and "in sharing officers and directors, it is imputed with perfect knowledge of the purposes for which the infringing domain name is used."  Pl's Supp. Br. at 6.

It is undisputed that ComponentArt Holdings is the owner/ registrant of the domain name <componentart.com>.  *See* Pl's Exhibit 18, ComponentArt Holdings' Responses to Requests for Admissions.   However, it is also undisputed that ComponentArt Inc. owns and

---

[4]      ComponentArt Holdings contends that the term "owns / owner" of a domain name
may not be accurate; rather one "registers" for a domain name, which allows the
registrant use of the domain name for a certain period.  *See* Depo. of Steven Rolufs:
"I'm not sure if the term is that you own a domain name."  Depo. of June 14, 2007
at 38, Exhibit 19.

controls the actual website from which internet users can access information about the products and services offered by ComponentArt Inc.  The uncontroverted evidence confirms that ComponentArt Holdings does not use the website to market, manufacture, sell, offer for sale, import or export any products; does not engage in any solicitation through the website; and does not host, maintain, contribute content to, or otherwise participate in the operation of the website located at www.componentart.com.

Furthermore, an actual review of the website reveals that ComponentArt Holdings is not identified in any way.  In fact, the website includes only the address and phone number for ComponentArt Inc., not ComponentArt Holdings, and directs that general inquiries should be made to "ComponentArt Inc., 511 King Street West,  Suite 400, Toronto, Ontario M5V 1K4 Canada."

The Court finds and rules that the fact that ComponentArt Holdings is the owner / registrant of the domain name <componentart.com>, without any involvement or control in the actual operation of the website, is simply not enough to confer personal jurisdiction over ComponentArt Holdings.   Furthermore, the Court finds and rules Plaintiff has failed to produce any credible evidence that any officer of ComponentArt Holdings directs or controls the operations of ComponentArt Inc. in such a way that ComponentArt Holdings should be "imputed with perfect knowledge of the purposes for which the infringing domain name is used."

Plaintiff also argues that personal jurisdiction should be conferred upon ComponentArt Holdings because (i) it is the patent holder for certain technologies developed by ComponentArt Inc. that are "comingled into products bearing the infringing mark" and (ii)

7

ComponentArt Holdings has filed a patent application in the United States.  The Court cannot agree.

Mere ownership of intellectual property rights is not sufficient to establish personal jurisdiction.  *See Obdyke Inc. v. Owens Corning,* No. 02-cv-84-8, 2004 WL 870701 (E.D. Pa. March 29, 2004).  Likewise, "[o]wnership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia."  *Telcordia Technologies, Inc. v. Alcatel S.A.*, No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C-95-3577 DLJ, 1996 WL 467293, at *6 n. 5 (N.D.Cal. July 24, 1996) (citing 35 U.S.C. § 293)).

Accordingly,  the mere ownership of intellectual property simply does not confer jurisdiction over ComponentArt Holdings.

In sum, based upon the newly submitted evidence, and the reconsideration of previously submitted evidence in light of that new evidence, the Court finds and rules that while Plaintiff has shown a close relationship between ComponentArt Holdings and ComponentArt Inc., the Court is not persuaded that this relationship is sufficient to meet the requirement that ComponentArt Holdings "purposefully availed" itself of the "privilege of conducting activities within the forum state."  *Hanson v. Denckla,* 357 U.S. 235 (1958).  Accordingly, the Court finds that Plaintiff has failed to carry its burden of demonstrating that ComponentArt Holdings has the requisite minimum contacts to establish personal jurisdiction.

B.       Vernon Rolufs

Plaintiff continues to argue that "Vernon Rolufs is subject to this Court's specific jurisdiction because he actively, consciously, and purposefully participated in . . . conspiratorial actions injuring Plaintiff in this Commonwealth."  In support of its arguments, Plaintiff relies on the fact that Vernon Rolufs was the President of ComponentArt Holdings from December 18, 2003 to February 1, 2004, and that, according to Plaintiff, Vernon Rolufs "has a deep understanding of the activities of the ComponentArt markets, distribution methods and territories" and "was the principle promoter for the company, raising capital in a 'debt financing.' "  Pl's Supp. Br. at 21-22.  However, based on the record evidence, the Court finds these arguments to be without merit.

Initially, the Court notes that Plaintiff continues to advance the same argument it made in its original response to the motion to dismiss and said argument was previously given due consideration and rejected by this Court.  It is not disputed that Vernon Rolufs was President of ComponentArt Holdings from December 18, 2003 to February 1, 2004.  However, he testified by deposition that he did not participate in the decision to adopt the name "ComponentArt Inc." or any of the day-to-day business operations of ComponentArt Holdings or ComponentArt Inc.  Plaintiff offers no evidence to rebut such testimony, but rather relies on conjecture and speculation.   Therefore, the Court finds that this argument does not warrant further analytical discussion.

Plaintiff also argues that Vernon Rolufs signed several resolutions in either his capacity as President or shareholder of ComponentArt Holdings and that these resolutions approved "the very transactions at issue that caused injury to Plaintiff."  Pl's Supp. Br. at 21.

However, after a deliberate review of the resolutions which Plaintiff attached to its supplemental brief, the Court has yet to find a single resolution which addresses the issue of the adoption or use of the name "ComponentArt".  *See* Pl's Exhibit 5; Exhibit 12.

As new evidence, Plaintiff argues that a "serendipitously discovered investment memorandum produced by the only known United States third party during jurisdictional discovery" substantiates Plaintiff's claim that "Vernon Rolufs was raising investment capital for ComponentArt Inc. within these United States."  Pl's Supp. Br. at 22, 24.  The Court finds, however, that the jurisdictional discovery evidence does not support this claim.

First, the Court finds and rules that the record is clear that the transactions in question were personal loans and not investment contracts as Plaintiff suggests.  The personal loans were repaid by monthly payments with an interest rate of 10% calculated on the declining monthly balance.  *See* Pl's Exhibit 15.  When asked as to his understanding of the terms "investment" and "loan," Vernon Rolufs testified as follows:

> I'm not an accountant or lawyer, so I don't know the - - what should we call it, the subtle differences in the terms?  So I misused them, possibly, but they were always loans from these people and it was a loan to Cyberakt.

(V. Rolufs Depo. 65:16-20).

Several times during his deposition, Roy Lietzau, the "third party" who produced the investment memorandum, testified that in his mind he was not "investing" in ComponentArt Inc. but rather was simply lending money to his friends, Vernon and Darlene Rolufs.  For example, Mr. Lietzau testified as follows:

> Q:     Okay, can you identify this document (Ex P2).

10

A:        This is a promissory note to repay me the $60,000 I loaned to Vern.

(R. Leitzau Dep.  16: 10-12).

* * * *

Q:        This document (Ex P3) reflects - - Well, can you identify the document for us Mr. Leitzau?

A:        It's a repayment schedule and a promissory note for $48,000 that I loaned to Vern.

(R. Lietzau Dep. 17:2-6).

* * * *

Q:        Okay.  So you were lending ComponentArt  $60,000; is that what you understood?

A:        No.  No. I -- I loaned money to Vern and Darlene for -- you know, their -- their -- son was just starting in business, and Vern was looking for some funds, so I loaned it to them, and I don't know what they - - you know, I - - they assume, gave it to ComponentArts.

(R. Leitzau, Dep. 18: 18-24).

* * * *

Q:        We're only trying to establish - - I mean although its with some difficulty, apparently.  We're only trying to establish that you did make an investment into one of these - - these div - - I'm -- you know, I'm not sure you're clear on what entity you made an investment into, if I understand your testimony.

A:        I - - I loaned Vern and Darlene a total of 108 - - $60,000 and then $48,000.

Q:        Right.

A:        And it was for - - and I don't know what they did with the money, but it was because their son was going into business and needed, I guess, some capital. That's what I know.

(R. Lietzau Dep. 47:  2-14).

* * * *

Q:      (By Mr. Robins)  Periodically during the course of this deposition, the terms investment and loan has (sic) been used.  Can you please - -

A:      Can I please what?

Q:      What is your understanding of the meaning of the term investment?

A:      Let me - - let me just put it in my own words. Is that all right?

Q:      That's what I'm asking, yes.

A:      I loaned Vern $60,000 and then $48,000 so he could help fund his son's new business venture.

Q:      In your mind, did you invest money in either CYBERAKT, Inc.; ComponentArt, Inc.; or ComponentArt Holdings, Inc.?

A:      No.  No, no, no . . .

(R. Lietzau Depo 61:15-62:4).

Plaintiff also contends that Roy Lietzau "required ComponentArt sign the instrument."  Pl's Supp. Br. at 25.  However, the deposition testimony of both Steven Rolufs and Roy Leitzau does not support this contention.

Steven Rolufs, as "Chief Executive Officer," personally co-signed the Promissory Notes issued to Roy Lietzau and his wife.  When asked about the capacity in which he signed the Promissory Notes, Steven Rolufs testified in his deposition as follows:

> It was my understanding at the time I signed it personally . . . I know both of those promissory notes, I know that my father asked me if I would also sign a promissory note between him and one of his lenders to make that lender feel more comfortable about the money he was lending to my father.  Given everything that my father was doing at the time to lend us the money that basically was able to help us, I was willing to personally cosign that note.  It did not seem like a big deal to me at all . . .  I see my signature, I see the words chief executive officer.  I still never felt I was signing as anything but personally to guarantee this, as my father put it in front of me and asked if I would personally guarantee it to make Roy feel more comfortable about the money he was lending to my father Vern . . .

12

at no point did I feel was signing on behalf of the company, a loan directly
on behalf of the company at all.  That was never how it was explained to
me.

(S. Rolufs Depo. 122:4-5, 18  25; 123:1, 123:23-124:`-5; 124: 17-20 (June 4, 2007)).

Likewise, when asked to explain why Steven Rolufs had signed the Promissory

Notes, Roy Lietzau testified as follows:

> Q:    Do you have an understanding, sir, as to why there are three
>       signatures at the bottom of [the Promissory Note]?
>
> A:    Yea.  They - - yeah.  That's - - that - - I asked for, you
>       know, a promissory note, and I wanted it signed by Vern
>       and Darlene, and I also asked that they had their son sign it.
>
> Q:    Okay.  And why did you ask that their son sign it?
>
> A:    Because they're as old as I am, and I wanted someone in the
>       family to know that they had an obligation to repay the
>       money I lent - - lent to Vern and Darlene.

(R. Leitzau Depo, 18: 3-12.)

Also of import is the fact that all of the loan transactions acquired by Vernon Rolufs

were completed between July 15, 2003 and September 24, 2003, with additional loan

transactions completed between April 1, 2004 and September 1, 2004, and again on February 1,

2005.  (See Def's Exh. 1 filed under seal; Pl's Ex. 15).  None of the loan transactions were

acquired during the time that Vernon Rolufs was the President of ComponentArt Holdings, i.e.,

from December 18, 2003 to February 1, 2004.

Finally, it is undisputed that all of the efforts of Vernon Rolufs to "borrow" money to

loan to ComponentArt Inc. took place in Canada with the exception of the two transactions with

Roy Lietzau and his wife.  However, the Lietzaus reside in Arkansas and the loan transactions

in question were completed following a face-to-face meeting in Minnesota and a handful of

13

subsequent telephone calls between Vernon Rolufs while located in Canada and Roy Lietzau while in Arkansas.  The events leading to those loans, as well as the loan transactions themselves, took place entirely outside of Pennsylvania.

In sum, based upon the newly submitted evidence, and the reconsideration of previously submitted evidence in light of that new evidence, the Court continues to find that the requirements for personal jurisdiction are not met and Vernon Rolufs will be dismissed as a defendant in this case.


C.       *Federal Rule of Civil Procedure 4(k)*

In the alternative, Plaintiff asserts that jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) because "both subject defendants have sufficient contacts with the United States such that the Court's exercise of personal jurisdiction comports with due process requirements of the Constitution."  Pl's Supp. Br. at 29-30.

Rule 4(k)(2) provides as follows:

> If the exercise of jurisdiction is consistent with the Constitution and laws
> of the United States, serving a summons or filing a waiver of service is
> also effective, with respect to claims arising under federal law, to establish
> personal jurisdiction over the person of any defendant who is not subject
> to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2).  In order to establish jurisdiction pursuant to Rule 4(k)(2),  Plaintiff's claim must (i) arise under federal law; (ii) the defendants must lack sufficient contacts with any state to subject it to personal jurisdiction; and (iii) the defendants must have sufficient contacts with the United States as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258-59 (3d Cir. 2000).  "The third prong of the test under Rule

4(k)(2) -- minimum contacts -- is similar to that of personal jurisdiction for a particular state: 'general jurisdiction is available when the defendant's contacts unrelated to the litigation are continuous and systematic'." *Saudi v. Acomarit Maritime Services, S.A.*, 114 F. Appx. 449, 455 (3d Cir. 2004) (*quoting BP Chem. Ltd. v. Formosa Chem. and Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000)).

Plaintiff contends that all three requirements of Rule 4(k)(2) are satisfied. Again, the Court cannot agree.

Even assuming that Plaintiff was able to show the first two required elements, the Court finds and rules that Plaintiff cannot satisfy the third requirement of Rule 4(k)(2) because the record evidence demonstrates that both ComponentArt Holdings and Vernon Rolufs lack sufficient contacts with the United States as a whole to satisfy due process. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play'." *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Plaintiff simply argues that "both subject defendants have sufficient contacts with the United States such that the Court's exercise of personal jurisdiction comports with due process requirements of the Constitution." Pl's Supp. Br. at 30.

However, as previously discussed, ComponentArt Holdings is a Canadian holding company that does not make, sell, export or import any products into the United States. ComponentArt Holdings does not maintain any offices in the United States or lease or own any

real property in the United States.  It does not maintain any bank accounts in Pennsylvania and has never contracted to supply services or things in Pennsylvania or the United States. ComponentArt Holdings does not have any employees and all its shareholders and officers reside outside of the United States.

As discussed at length in the Memorandum Opinion and Order of March 12, 2007, as well as the instant Memorandum Opinion, the Court finds and rules that ComponentArt Holdings does not have sufficient contacts with the United States such that the Court's exercise of personal jurisdiction over it would comport with due process requirements of the Constitution.

Likewise, the Court finds that the record is unequivocal that Vernon Rolufs is a resident of and is domiciled in Ontario, Canada; neither owns any property or real estate in Pennsylvania; has never purchased any products in Pennsylvania and has never ordered products from entities located in Pennsylvania; and has been present in Pennsylvania only while driving in a vehicle from Ontario to Florida.

Again, as discussed at length in the Memorandum Opinion and Order of March 12, 2007, as well as the instant Memorandum Opinion, the Court finds that Vernon Rolufs does not have sufficient contacts with the United States such that the Court's exercise of personal jurisdiction over him would comport with due process requirements of the Constitution.

**CONCLUSION**

For the reasons hereinabove discussed, the Court finds that it does not have personal jurisdiction over John Doe (Vernon Rolufs) and ComponentArt Holdings, Inc., and, thus, the Motion to Dismiss will be granted.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


COMPONENTONE, L.L.C.,           )
                                        )
                Plaintiff,          )
                                        )
             v.                 )     02:  05cv1122
                                        )
COMPONENTART, INC.,             )
COMPONENTART HOLDINGS, INC.,   )
STEVE G. ROLUFS, MILJAN BRATICEVIC, )
JANE DOE, DUSAN BRATICEVIC,    )
JOHN DOE and CYBERAKT, INC.,     )
                                        )
                Defendants.     )

**ORDER OF COURT**

AND NOW, this 16th day of August  2007, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the

Court's Order of March 12, 2007 is reinstated and that the Motion to Dismiss John Doe

(Vernon Rolufs) and ComponentArt Holdings, Inc. Under Fed. R.Civ.P. 12(b)(2) For Lack of

Personal Jurisdiction is **GRANTED.**


It is further **ORDERED** that Defendants John Doe (Vernon Rolufs), Jane Doe

(Milena Braticevic), and ComponentArt Holdings, Inc. are dismissed as defendants in this

matter and the caption is amended to so reflect as follows:

COMPONENTONE, L.L.C.,                    )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        02:  05cv1122
                                         )
COMPONENTART, INC.,STEVE G.              )
ROLUFS, MILJAN BRATICEVIC,               )
DUSAN BRATICEVIC, and                    )
CYBERAKT, INC.,                          )
                                         )
        Defendants.                      )


                        BY THE COURT:

                        s/Terrence F. McVerry
                        United States District Court Judge


cc:     Dennis M. Moskal, Esquire
        Technology & Entrepreneurial Ventures Law Group
        Email: mailroom.dmm@zegarelli.com

        Gregg R. Zegarelli, Esquire
        Technology & Entrepreneurial Ventures Law Group
        Email: mailroom.grz@zegarelli.com

        Frederick W. Thieman , Esquire
        Thieman & Ward
        Email: fwt@thiemanward.com

        Jonathan M. Gelchinsky, Esquire
        Finnegan, Henderson, Farabow, Garrett & Dunner
        Email: jon.gelchinsky@finnegan.com

        Lawrence R Robins, Esquire
        Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
        Email: larry.robins@finnegan.com